**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

UNITED STATES OF AMERICA, for
the use of TBI INVESTMENTS, INC.,

                Plaintiff,

v.                                    CIVIL ACTION NO.   2:14-cv-29074

BROOALEXA, LLC et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants' Motion to Dismiss, or in the Alternative, to Stay Action and Compel Arbitration (the "Motion"). (ECF No. 7.) For the reasons discussed herein, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

### *I.  Background*

This case arises out of a contractual dispute between the prime contractor and subcontractor on a federal construction project. Defendant BrooAlexa, LLC ("BrooAlexa") was the prime contractor "for the construction of the project identified as FCI McDowell West Virginia Staff Training Building" (the "Project"), (ECF No. 7, Ex. A, art. I(A); *id.*, Ex. B, art. I(A)), "for the United States Federal Bureau of Prisons" (the "FBP") "under US-8A-DOJ-FBP-2013-11SC," (ECF No. 1 ¶ 7). Defendant American Contractors Indemnity Company ("American Contractors") "is . . . the Surety for [Defendant] BrooAlexa, and has furnished to the United States a payment bond as required by the" contract between Defendant BrooAlexa and the FBP relating to the

1

Project "and pursuant to 40 U.S.C. §§ 3131 to 3134." (*Id.* ¶ 8; *see also id.*, Ex. A (constituting a payment bond executed on May 23, 2013, with the principal listed as Defendant BrooAlexa and the surety listed as Defendant American Contractors).)

Defendant BrooAlexa "[s]ubcontracted with [Plaintiff] to perform various portions of the site work for the [Project]." (*Id.* ¶ 9.) Plaintiff and Defendant BrooAlexa executed two contracts relating to Plaintiff's subcontracting work on the Project (the "Contracts"). (*See* ECF No. 7, Ex. A; *id.*, Ex. B.) The first agreement provides that Defendant BrooAlexa agrees to pay Plaintiff $300,000.00 for its work on the Project, (*id.*, Ex. A, art. I(B)(3)), while the second states that Defendant BrooAlexa agrees to pay Plaintiff $218,350.00 for this work, (*id.*, Ex. B, art. I(B)(3)). The two Contracts are otherwise materially identical, for purposes of the present Motion. (*Compare id.*, Ex. A, *with id.*, Ex. B. *But see id.*, Ex. B, at 7 (providing a "Telephone Quote Sheet" attached to the second agreement, which is not attached to the first agreement).) Both Contracts were signed by Lindsey Ray—the President of Plaintiff—on May 31, 2013, and countersigned by Gene Brooks—the President of Defendant BrooAlexa—on June 5, 2013. (ECF No. 7, Ex. A, at 6; *id.*, Ex. B, at 6.)

On the sixth and final page of the Contracts, the agreements both include the following identical "Alternative Dispute Resolution Process" clause (the "ADR Clause") directly above the signature lines:

**ARTICLE XVI.** <u>ALTERNATIVE DISPUTE RESOLUTION PROCESS</u>

The Subcontractor and the Contractor covenant and agree in the event of any claim, dispute or other matter in question arising out of or relating to this Agreement or breach thereof, the Subcontractor and the Contractor shall continue to perform (except to the extent performance is otherwise excused pursuant to the Contract Documents) all obligation[s] as required under the Contract notwithstanding the

existence of such dispute(s)and [sic] that either party may seek such relief as may be permitted in accordance with the following terms and conditions:

Subcontractor and Contractor agree to negotiate, in good faith, in an attempt to resolve any dispute(s) for a period of at least sixty (60) business days following the receipt of written notice from either party to the other which shall set forth, in specifics, the nature and description of the dispute(s), the action or inaction of the other party which caused the dispute(s), and the relief or remedy requested by the notifying party.

Should Subcontractor and Contractor be unable to resolve said dispute(s) through mediation, any and all dispute(s), at the sole discretion of Contractor, shall be settled by the American Arbitration Association in accordance with it [sic] Construction Industry Arbitration Rules (including the Emergency Interim Relief Procedures). The award rendered by the arbitrators in accordance with this provision shall be final and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof, but the arbitrator (2) [sic] shall have no jurisdiction, power or authority to decide or award punitive damages. All arbitration proceeding[s] or hearings shall be conducted in a location designated by the Contractor. The arbitrator(s) shall exclusively and in all respects apply West Virginia law.

Contractor may join any other party in the arbitration proceeding[s] that Contractor determines is necessary to reach a complete adjudication of any disputes arising under the terms if [sic] this Agreement, and/or dispute arising under the terms of any other agreement or contract entered into between Contractor and any other party performing work on the Project. All disputes not resolved by arbitration pursuant to the terms of this provision will be resolved by litigation in any court having jurisdiction thereof, utilizing West Virginia law.

Subcontractor expressly agrees to be joined in any litigation filed by the Owner of the Project against the Contractor in either the State courts or the U.S. District Courts in the jurisdiction where the Project is located, to the extent Subcontractor's Work is relevant to Owner's and/or Contractor's claims.

(ECF No. 7, Ex. A, art. XVI; *id.*, Ex. B, art. XVI. *See generally id.*, Ex. A, at 1 (defining Plaintiff as the "Subcontractor," Defendant BrooAlexa as the "Contractor," and the FBP as the "Owner"); *id.*, Ex. B, at 1 (same).)

The Complaint alleges that Plaintiff's "original quote for the Subcontract work was $954,500.00," but Defendant "BrooAlexa informed [Plaintiff] that its quote was too high and had to be lowered substantially." (ECF No. 1 ¶ 10.) The Complaint avers that, "[i]n order to arrive at the final . . . amount of $518,350.00, by express agreement by and between [Defendant]

BrooAlexa and [Plaintiff], the purchase of materials as well as any costs for potentially encountering, excavating, removing and/or replacing rock or other differing site conditions were removed from the scope of the work." (*Id.*). The Complaint further alleges that the parties "expressly agreed and made part of the [Contracts] that [Plaintiff] would be compensated for all costs incurred in dealing with rock and other differing site conditions through change orders to the [Contracts]." (*Id.*; *cf. id.* ¶ 11 ("The revised scope of the [Contracts] did not include any costs for addressing subsurface rock or other differing site conditions nor did the [Contracts] contain any sums for the purchase of materials, which were to be purchased by [Defendant] BrooAlexa.").)

The Complaint avers that, "[a]lmost immediately after the site-work began, [Plaintiff] encountered a substantial amount of rock and other differing site conditions." (*Id.* ¶ 12.) According to the Complaint, "[Plaintiff] immediately notified [Defendant] BrooAlexa and requested that a change order be issued," "[Defendant] BrooAlexa agreed that a change order would and should be executed," but "no such change order was ever finalized." (*Id.*) The Complaint alleges that, "[Defendant] BrooAlexa requested that [Plaintiff] submit its actual and estimated costs that it had and would incur in dealing with the rock and other differing site conditions," and that "[Plaintiff] promptly complied and requested an additional amount of $432,832.05 for work, equipment and labor associated with the rock and other differing site conditions." (*Id.* ¶ 13.) The Complaint also asserts that, "[d]uring the remainder of the project, [Plaintiff] submitted additional . . . claims for extra/additional work to [Defendant] BrooAlexa." (*Id.* ¶ 16.) The Complaint alleges that, despite these additional claims, "[Defendant] BrooAlexa failed and refused to pay" Plaintiff for work related to differing site conditions, the "extra/additional work," or an amount from the Contracts that "[Defendant] BrooAlexa alleges that it paid for materials for [Plaintiff's] work." (*Id.* ¶¶ 14–

4

17.) The Complaint alleges that "[Plaintiff] filed a claim under the applicable payment bond with [Defendant] American Contractors but its claim [was] rejected." (*Id.* ¶ 20.)

On November 26, 2014, Plaintiff filed the Complaint "in the name of the United States of America pursuant to 40 U.S.C. § 3133." (*Id.* ¶ 2.) The Complaint includes the following four claims: (1) Count I is a breach of contract claim against Defendant BrooAlexa, (*id.* ¶¶ 21–24); (2) Count II is a breach of payment bond claim under the Miller Act against Defendant American Contractors, (*id.* ¶¶ 25–28); (3) Count III is a quantum meruit claim against both Defendants, (*id.* ¶¶ 29–34); and (4) Count IV is a claim under the federal Prompt Payment Act against both Defendants, (*id.* ¶¶ 35–41). The Complaint requests a "judgment against [Defendants] jointly and severally . . . in the amount of at least $683,337.94 representing the past-due principal amount plus extended general conditions, extended home office overhead, lost profits, lost business opportunities and other compensable damages as well as applicable interest, costs and attorney's fees." (*Id.* at 8.) The Complaint does not reference the ADR Clause and Plaintiff did not attach the Contracts to the Complaint. (*See* ECF No. 1.)

On January 15, 2015, Defendants filed the Motion, in which they argue that some of Plaintiff's claims are arbitrable under the ADR Clause and request that the Court compel arbitration as to those claims and dismiss or, alternatively, stay this case pending the arbitration proceedings. (ECF No. 7.) Defendants attached the Contracts to the Motion. (*See id.*, Ex. A; *id.*, Ex. B.) Plaintiff filed its responsive briefing on January 28, 2015, (ECF No. 11), and Defendants filed their reply briefing on February 4, 2015, (ECF No. 12). As such, the Motion is fully briefed and ready for disposition.

5

## II.   Legal Standard

Defendants move for dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). (*See, e.g.*, ECF No. 8 at 1.) "Under Rule 12(b)(1), a federal court must dismiss a claim if the court lacks subject-matter jurisdiction over the claim." *Zimmeck v. Marshall Univ. Bd. of Governors*, Civil Action No. 3:13–14743, 2013 WL 5700591, at *2 (S.D. W. Va. Oct. 18, 2013). "A motion to dismiss pursuant to Rule 12(b)(1) raises the fundamental question of whether a court is competent to hear and adjudicate the claims brought before it." *Id.* "Challenges to jurisdiction under Rule 12(b)(1) may be raised in two distinct ways: 'facial attacks' and 'factual attacks.'" *Id.* (quoting *Thigpen v. United States*, 800 F.2d 393, 401 n.15 (4th Cir. 1986), *rejected on other grounds*, *Sheridan v. United States*, 487 U.S. 392 (1988)).

Under a "facial attack," the defendant argues "that the allegations of the complaint are facially insufficient to sustain the court's jurisdiction." *Thigpen*, 800 F.2d at 401 n.15. "Confronted with a motion of that kind, the court must proceed as it would on a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Id.* "The allegations in the complaint are taken as true, and materials outside the pleadings are not considered." *Id.* (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) and *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981)).

In a "factual attack," the defendant contends "that the plaintiff's jurisdictional allegations, though facially adequate, are factually untrue." *Id.* "In determining whether jurisdiction exists" in the context of a factual attack, "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citations omitted). "The district court should

apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id.* (citing *Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*, 813 F.2d 1553, 1559 (9th Cir. 1987)).

"[M]otions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment." *Shaffer*, 321 F. Supp. 2d at 683. Nonetheless, "[c]ourts have deemed a motion seeking to compel arbitration as a factual attack as it asserts that a provision of an extrinsic document, an arbitration clause contained within the body of a contract, deprives the court of its power to adjudicate the plaintiff's claims." *Shea v. BBVA Compass Bancshares, Inc.*, No. 1:12–cv–23324–KMM, 2013 WL 869526, at *2 (S.D. Fla. Mar. 7, 2013) (quoting *Bell v. Atl. Trucking Co.*, No. 3:09-cv-406-J-32MCR, 2009 WL 4730564, at *3 (M.D. Fla. Dec. 7, 2009)).

In this case, the Court must consider factual arguments and documents outside of the pleadings—particularly the Contracts—to address the Motion. As such, the Court will treat the Motion under Rule 12(b)(1) as a factual attack on this Court's jurisdiction, "apply the standard applicable to a motion for summary judgment," and "consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768; *see also Minter v. Freeway Food, Inc.*, No. 103CV00882, 2004 WL 735047, at *2 (M.D.N.C. Apr. 2, 2004) ("Decisions in other circuits have uniformly held that '[i]n the context of motions to compel arbitration brought under the Federal Arbitration Act . . . , 9 U.S.C. § 4 (2000), courts apply a standard similar to that applicable to a motion for summary judgment.'" (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003))).

7

Under the summary judgment standard, the moving party has the initial burden of demonstrating that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). Summary judgment is inappropriate if there exist factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). When construing such factual issues, the Court must view the evidence "in the light most favorable to the [party opposing summary judgment]." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

Once the moving party has met its burden, the burden shifts to the nonmoving party to demonstrate that a genuine issue of material fact exists for trial. *See Liberty Lobby*, 477 U.S. at 256. "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* "The mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to withstand summary judgment; the judge must ask whether "the jury could reasonably find for the plaintiff." *Id.* at 252.

### III. Discussion

Defendants argue that the Federal Arbitration Act ("FAA") directs the Court to compel the parties to arbitrate Counts I, III, and IV pursuant to the ADR Clause.[1] (*See* ECF No. 12 at 14.)

---

[1] In their Memorandum in Support of the Motion, Defendants initially argued that the Court should also compel arbitration as to Count II (Miller Act claim). (*See* ECF No. 8 at 8.) However, Defendants retracted this argument in their reply briefing and no longer argue that the Court should compel arbitration as to Count II. (*See* ECF No. 12 at 14 ("This Court should not hesitate to stay this action and compel [Plaintiff] to pursue its cognizable claims, with the

Defendants also argue that, following the Court finding that arbitration is appropriate, the Court should dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(1) or, alternatively, stay this action pending the resolution of the arbitration proceedings. (*See* ECF No. 8 at 8–10, 13.) For the reasons discussed below, the Court grants the Motion insofar as it requests the Court to compel the parties to arbitrate Counts I, III, and IV of the Complaint and stay this case pending the resolution of those proceedings.

## A.      Compelling Arbitration Under the FAA

"While state law controls issues of 'the validity, revocability, or enforceability of contracts generally,'" *Chandler v. Journey Educ. Mktg., Inc.*, Civil Action No. 2:10–cv–00839, 2010 WL 5058420, at *2 (S.D. W. Va. Dec. 3, 2010) (quoting *Perry v. Thomas*, 482 U.S. 483, 493 n.9 (1987)), "the FAA 'create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act,'" *id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). "Congress passed the [FAA] 'to reverse the longstanding judicial hostility to arbitration agreements.'" *Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 305 (4th Cir. 2001) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500

---

exception of its Miller Act claim, via arbitration.").) As discussed in detail below, the ADR Clause provides that Defendant BrooAlexa has the sole right to request arbitration. (*See* ECF No. 7, Ex. A, art. XVI; *id.*, Ex. B, art. XVI.) As Defendants do not request this relief for Count II, the Court does not reach the issue of whether it must compel arbitration as to this Miller Act claim. *Cf. Raymond James Fin. Servs., Inc. v. Cary*, 709 F.3d 382, 386 (4th Cir. 2013) ("The Supreme Court 'has never held that the presumption [in favor of arbitration] overrides the principle that a court may submit to arbitration only those disputes . . . the parties have agreed to submit.'" (quoting *UBS Fin. Servs., Inc. v. Carilion Clinic*, 706 F.3d 319, 324 n.2 (4th Cir. 2013))).

Additionally, Defendants initially argued that the Court should only compel arbitration as to Counts I, II, and IV, and dismiss Count III (quantum meruit) for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* ECF No. 8 at 8.) However, in their reply briefing, Defendants argue that the Court should compel arbitration of Plaintiff's "cognizable claims, with the exception of its Miller Act claim." (ECF No. 12 at 14.) Pursuant to the federal policy favoring arbitration, the Court construes Defendants' arguments as requesting that the Court compel arbitration of Count III. *See, e.g.*, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ."); *Winston-Salem Mailers Union 133, CWA v. Media Gen. Operations, Inc.*, 55 F. App'x 128, 138 (4th Cir. 2003) ("[I]t is also well settled law that federal policy favors arbitration of labor disputes, and that a presumption of arbitrability is to be applied in cases of ambiguity or doubt." (citation omitted)).

U.S. 20, 24 (1991)); *see also Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005) ("[T]he FAA serves as 'a response to hostility of American courts to the enforcement of arbitration agreements, a judicial disposition inherited from then-longstanding English practice." (quoting *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001))). "The FAA reflects 'a liberal federal policy favoring arbitration agreements.'" *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24). "Underlying this policy is Congress's view that arbitration constitutes a more efficient dispute resolution process than litigation." *Id.* (citing *Hightower v. GMRI, Inc.*, 272 F.3d 239, 241 (4th Cir. 2001)). "The [FAA], of course, 'does not mandate arbitration of all claims, but merely the enforcement . . . of privately negotiated arbitration agreements.'" *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 813 (4th Cir. 1989) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985)); *see also Sydnor*, 252 F.3d at 305 ("Congress did not intend for the FAA to force parties who had not agreed to arbitrate into a non-judicial forum . . . ." (citing *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989))). However, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself [should be] resolved in favor of arbitration." *Volt Info. Scis., Inc.*, 489 U.S. at 476; *see also Peoples Sec. Life Ins. Co.*, 867 F.2d at 812 ("[T]he heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration." (citing *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 583 (1960))).

"The [FAA], 9 U.S.C. §§ 1–14 . . . sets forth the general federal law relating to arbitration." *Peoples Sec. Life Ins. Co.*, 867 F.2d at 813. "Section 2 is the primary substantive provision of the

[FAA]," *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24, and provides, in pertinent part, that "an agreement in writing to submit" controversies "to arbitration . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2. Section 3, in turn, "requires a court to stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration.'" *Adkins*, 303 F.3d at 500 (quoting 9 U.S.C. § 3). "This stay-of-litigation provision is mandatory." *Id.* "A district court therefore has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Id.* (citing *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir. 2001)); *see also Sydnor*, 252 F.3d at 305 ("The FAA mandates that if parties execute a valid agreement to arbitrate disputes, a federal court must compel arbitration.").

"In the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate '(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.'" *Adkins*, 303 F.3d at 500–01 (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)). "In considering these factors, a district court must remain 'mindful of the clear federal directive in support of arbitration.'" *Chandler*, 2010 WL 5058420, at *3 (quoting *Adkins*, 303 F.3d at 500).

Defendants argue that all four factors are satisfied here. (ECF No. 8 at 5–8.) Plaintiff does not contest that all four of these factors are satisfied in this case. (*See* ECF No. 11.) The Court agrees and finds that these factors are satisfied in this matter.

Plaintiff nonetheless argues that arbitration is inappropriate under the FAA because the ADR Clause is invalid and unenforceable under West Virginia law. (*Id.* at 3–9.) The Court now turns to this argument.

## B.     The Validity and Enforceability of the ADR Clause

Plaintiff argues that the ADR Clause "purporting to require arbitration is unconscionable and ambiguous and is not enforceable." (ECF No. 11 at 11.) Defendants respond that the ADR Clause is valid and "cover[s] the dispute at issue," and that "Plaintiff is not entitled to the drastic remedy it seeks." (ECF No. 12 at 5.)

As noted above, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Of course, courts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract.'" *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 627 (1985) (quoting 9 U.S.C. § 2). "For instance, 'generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2.'" *Am. Gen. Life & Accident Ins. Co.*, 429 F.3d at 87 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). "Principles of equity may counsel for invalidation of an arbitration agreement if the grounds for revocation relate specifically to the arbitration clause." *Sydnor*, 252 F.3d at 305 (citing *Hooters of Am. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999)). "However, when claims allege [the invalidity] of the contract generally, these issues are determined by an arbitrator because the dispute pertains to the formation of the entire

12

contract, rather than the arbitration agreement." *Id.* (citing *Coleman v. Prudential Bache Sec., Inc.*, 802 F.2d 1350, 1352 (11th Cir. 1986)).

"Although federal law governs the arbitrability of disputes, ordinary state-law principles resolve issues regarding the formation of contracts." *Am. Gen. Life & Accident Ins. Co.*, 429 F.3d at 87 (citing *Hill v. PeopleSoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005)); *see also Brown v. CMH Mfg., Inc.*, Civil Action No. 2:13–31404, 2014 WL 4298332, at *4 (S.D. W. Va. Aug. 29, 2014) ("Whether a party agreed to arbitrate a particular dispute is generally a question of contract formation under state law." (citing *Adkins*, 303 F.3d at 501)). "Courts may not, however, invalidate arbitration agreements under state laws applicable *only* to arbitration provisions." *Casarotto*, 517 U.S. at 687 (citations omitted). "By enacting § 2 . . . , Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed 'upon the same footing as other contracts.'" *Id.* (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974)); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) ("Section 2 embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts . . . .")

Plaintiff argues that the ADR Clause is invalid and unenforceable on two grounds—unconscionability and ambiguity. (ECF No. 11 at 3–9.) The Court addresses each argument, in turn.

1. Unconscionability

Plaintiff first challenges the enforceability of the ADR Clause by arguing that it is unconscionable. (*Id.* at 3–8.) Defendants respond that "the [Contracts] at issue in this case"—and

13

the included ADR Clause—"are neither procedurally nor substantively unconscionable and, for that reason, the [ADR Clause] should be enforced." (ECF No. 12 at 10.)

"To be enforceable, a contract cannot be unconscionable." *Montgomery v. Applied Bank*, 848 F. Supp. 2d 609, 614 (S.D. W. Va. 2012). "The doctrine of unconscionability means that, because of an overall and gross imbalance, one-sidedness, or lop-sidedness in a contract, a court may be justified in refusing to enforce the contract as written." *Brown ex rel. Brown v. Genesis Healthcare Corp.* (*Brown I*), 724 S.E.2d 250, 283 (W. Va. 2011), *vacated on other grounds by Marmet Health Care Ctr., Inc. v. Brown*, 132 S. Ct. 1201 (2012). "An analysis of whether a contract term is unconscionable necessarily involves an inquiry into the circumstances surrounding the execution of the contract and the fairness of the contract as a whole." *Troy Mining Corp. v. Itmann Coal Co.*, 346 S.E.2d 749, 750 (W. Va. 1986). A determination of unconscionability "is usually evaluated as of the time a contract is written," *Brown I*, 724 S.E.2d at 284 (citation omitted), and "must focus on the relative positions of the parties, the adequacy of the bargaining position, the meaningful alternatives available to the plaintiff, and the existence of unfair terms in the contract," *Art's Flower Shop, Inc. v. Chesapeake & Potomac Tel. Co. of W. Va.*, 413 S.E.2d 670, 671 (W. Va. 1991); *see also Brown v. Genesis Healthcare Corp.* (*Brown II*), 729 S.E.2d 217, 226 (W. Va. 2012) ("Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." (quoting *Williams v. Walker–Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965))). "The concept of unconscionability must be applied in a flexible manner, taking into consideration all of the facts and circumstances of a particular case." *Brown II*, 729 S.E.2d at 226.

14

"Unconscionability is an equitable principle, and the determination of whether a contract or a provision therein is unconscionable should be made by the court." *Troy Mining Corp.*, 346 S.E.2d at 750. "The court is charged with resolving the question of whether a contract provision was bargained for and valid." *Brown II*, 729 S.E.2d at 227 (citation omitted). "If a court, as a matter of law, finds a contract or any clause of a contract to be unconscionable, the court may refuse to enforce the contract, enforce the remainder of the contract without the unconscionable clause, or limit the application of any unconscionable clause to avoid any unconscionable result." *Id.* (quoting *Brown I*, 724 S.E.2d at 261). "The burden of proving that a contract term is unconscionable rests with the party attacking the contract." *Brown I*, 724 S.E.2d at 284.

"Under West Virginia law, unconscionability is analyzed in terms of procedural and substantive unconscionability." *CMH Homes, Inc. v. Browning*, Civil Action No. 2:14–cv–12762, 2015 WL 1276729, at *7 (S.D. W. Va. Mar. 19, 2015) (citing *Brown II*, 729 S.E.2d at 227). The Supreme Court of Appeals of West Virginia provided the following discussion regarding the required showing of procedural and substantive unconscionability:

> Procedural and substantive unconscionability often occur together, and the line between the two concepts is often blurred. For instance, overwhelming bargaining strength against an inexperienced party (procedural unconscionability) may result in an adhesive form contract with terms that are commercially unreasonable (substantive unconscionability). A contract term is unenforceable if it is both procedurally and substantively unconscionable. However, both need not be present to the same degree. Courts should apply a "sliding scale" in making this determination: the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the clause is unenforceable, and vice versa.

*Brown II*, 729 S.E.2d at 227 (citations omitted). "To be unenforceable, a contract term must—at least in some small measure—be both procedurally and substantively unconscionable." *Dan Ryan Builders, Inc. v. Nelson*, 737 S.E.2d 550, 558 (W. Va. 2012) (citations omitted); *see also State ex*

15

*rel. Johnson Controls, Inc. v. Tucker*, 729 S.E.2d 808, 820–21 (W. Va. 2012) ("Our law requires a

showing of both procedural and substantive unconscionability, at least in some small measure.").

*Procedural Unconscionability*

Plaintiff argues that the Contracts and the ADR Clause are procedurally unconscionable.

(*See* ECF No. 11 at 7–8.) The Court disagrees.

The Supreme Court of Appeals of West Virginia provided the following guidance

regarding the procedural unconscionability analysis:

> Procedural unconscionability is concerned with inequities, improprieties, or
> unfairness in the bargaining process and formation of the contract. Procedural
> unconscionability involves a variety of inadequacies that results in the lack of a real
> and voluntary meeting of the minds of the parties, considering all the circumstances
> surrounding the transaction. These inadequacies include, but are not limited to, the
> age, literacy, or lack of sophistication of a party; hidden or unduly complex contract
> terms; the adhesive nature of the contract; and the manner and setting in which the
> contract was formed, including whether each party had a reasonable opportunity to
> understand the terms of the contract.

*Brown II*, 729 S.E.2d at 227 (quoting *Brown I*, 724 S.E.2d at 261). "Considering factors such as

these, courts are more likely to find unconscionability in consumer transactions and employment

agreements than in contracts arising in purely commercial settings involving experienced parties."

*Id.* (quoting *Brown I*, 724 S.E.2d at 285).

Plaintiff offers numerous arguments as to why the ADR Clause is procedurally

unconscionable. (*See* ECF No. 11 at 7–8.) First, Plaintiff argues that the Contracts—and the

included ADR Clause—are contracts of adhesion. (*Id.* at 7.) "Procedural unconscionability often

begins with a contract of adhesion." *Brown II*, 729 S.E.2d at 228. "A contract of adhesion is one

drafted and imposed by a party of superior strength that leaves the subscribing party little or no

opportunity to alter the substantive terms, and only the opportunity to adhere to the contract or

16

reject it." *Id.* (quoting *Brown I*, 724 S.E.2d at 261); *see also State ex rel. Dunlap v. Berger*, 567 S.E.2d 265, 273 (W. Va. 2002) ("'Adhesion contracts' include all 'form contracts' submitted by one party on the basis of this or nothing . . . ." (quoting *Am. Food Mgmt., Inc. v. Henson*, 434 N.E.2d 59, 62–63 (Ill. App. Ct. 1982))). "A contract of adhesion should receive greater scrutiny than a contract with bargained-for terms to determine if it imposes terms that are oppressive, unconscionable or beyond the reasonable expectations of an ordinary person." *Brown II*, 729 S.E.2d at 228 (quoting *Brown I*, 724 S.E.2d at 261–62).

Plaintiff provides two arguments in support of its assertion that the ADR Clause is part of contracts of adhesion: (1) "the [Contracts were] drafted by [Defendant] BrooAlexa or its attorney the terms of which were not negotiable;" and (2) "[Plaintiff] was given no option to negotiate or modify any of [the Contracts'] terms." (ECF No. 11 at 7.) However, as Defendants correctly note, (*see* ECF No. 12 at 7 n.4), the Complaint includes allegations that undermine Plaintiff's adhesion argument, (*see* ECF No. 1 ¶ 10). In particular, the Complaint alleges that Plaintiff and Defendant BrooAlexa initially disagreed on the price for Plaintiff's work on the Project and subsequently agreed on a lower price with certain other provisos. (*See id.*) These assertions indicate that, contrary to Plaintiff's current arguments, the Contracts—and the included ADR Clause—were not form contracts or negotiated in a manner that provided Plaintiff with little or no opportunity to bargain for specific terms. *Cf. Dytko v. Chesapeake Appalachia, LLC*, Civil Action No. 5:13CV150, 2014 WL 2440496, at *5 (N.D. W. Va. May 30, 2014) (finding that a written agreement was not a contract of adhesion where "it [was] clear that negotiations took place

concerning the [agreement], and it was not offered on a take it or leave it basis"). Accordingly, the Court finds that the Contracts—and the included ADR Clause—are not contracts of adhesion.[2]

Second, Plaintiff argues that the Contracts—and the included ADR Clause—are procedurally unconscionable because there was a disparity in the sophistication of the parties. (*See* ECF No. 11 at 7–8.) Plaintiff contends that "the owner of [Plaintiff] . . . is not a sophisticated contractor like . . . the owner of [Defendant BrooAlexa]," Plaintiff's owner "was new to construction contracting when these subcontracts were thrust upon him," and Defendant BrooAlexa "routinely performs government contracts and fully understands the unequal bargaining power of a general contractor when dictating terms to its subcontractors." (*Id.*)

West Virginia courts found that contracts were unconscionable when there was a massive disparity in the sophistication of the parties, such as agreements between large commercial entities and individuals with minimal education or other potential impairments to their ability to effectively bargain. *See, e.g.*, *State ex rel. Saylor v. Wilkes*, 613 S.E.2d 914, 922 (W. Va. 2005) (finding that an agreement was unconscionable because, in part, "[t]he bargaining position between [the parties] was grossly unequal" and the plaintiff "possess[ed] only a tenth grade education, had little understanding of the law generally or arbitration specifically at the time" she entered into the agreement); *Arnold v. United Cos. Lending Corp.*, 511 S.E.2d 854, 861 (W. Va. 1998) (finding that an agreement was unconscionable due, in part, to "[t]he relative positions of the parties, a national corporate lender on one side and elderly, unsophisticated consumers on the

---

[2] Even if the Court found that the ADR Clause is part of contracts of adhesion, "[f]inding that there is an adhesion contract is the beginning point for analysis, not the end of it . . . ." *Berger*, 567 S.E.2d at 273 (quoting *Henson*, 434 N.E.2d at 63). "Since the bulk of contracts signed in this country, if not every major Western nation, are adhesion contracts, a rule automatically invalidating adhesion contracts would be completely unworkable." *Id.* (quoting *Henson*, 434 N.E.2d at 62). As such, "finding a contract of adhesion, alone, does not establish that the contract is procedurally unconscionable." *Montgomery v. Credit One Bank, NA*, 848 F. Supp. 2d 601, 606 (S.D. W. Va. 2012).

18

other" and where the plaintiffs had fifth and eighth-grade educations), *overruled on other grounds by Dan Ryan Builders, Inc. v. Nelson*, 737 S.E.2d 550 (W. Va. 2012). Those situations are clearly distinguishable from the present matter. Both Plaintiff and Defendant BrooAlexa are commercial entities, (*see* ECF No. 1 ¶¶ 1 & 3), that had the opportunity to negotiate at least some of the terms of the Contracts, (*see id.* ¶ 10); *cf. Thomas v. Matrix Sys. Auto. Finishes, LLC*, Civil Action No. 6:09-2169-HFF, 2010 WL 147956, at *6 (D.S.C. Jan. 14, 2010) ("The reasonableness of the arbitration clause is further supported by the fact that the [c]ourt here is dealing with a business agreement negotiated to address a specific business venture. Thus, the [c]ourt is not faced with one of the scenarios in which courts are more likely to strike down an arbitration clause such as where an employer is attempting to bind his employee to arbitration based on an employee handbook." (citation omitted)). Furthermore, Plaintiff does not argue that it was unable to understand the Contracts or the included ADR Clause due to any purported lack of sophistication or other impairment. (*See* ECF No. 11 at 7–8.); *cf. New v. GameStop, Inc.*, 753 S.E.2d 62, 76 (W. Va. 2013) (finding that an agreement was not procedurally unconscionable because, in part, "the petitioner . . . failed to offer any evidence that she was incapable due to age, literacy or lack of sophistication to understand the clear terms of the arbitration agreement . . . she signed upon her employment"). As such, if there was some disparity in the sophistication of Plaintiff and Defendant BrooAlexa based on their contracting experience, that disparity does not rise to the required level of a gross inadequacy in bargaining power. *Cf. Brown II*, 729 S.E.2d 217, 227 (W. Va. 2012) ("[C]ourts are more likely to find unconscionability in consumer transactions and employment agreements than in contracts arising in purely commercial settings involving experienced parties." (quoting *Brown I*, 724 S.E.2d 250, 261 (W. Va. 2011))). *See generally Troy Mining Corp. v. Itmann Coal Co.*, 346

19

S.E.2d 749, 753 (W. Va. 1986) ("[I]t is not the province of the judiciary to try to eliminate the inequities inevitable in a capitalist society."); *id.* ("In most commercial transactions it may be assumed that there is some inequality of bargaining power . . . ." (quoting *Ashland Oil, Inc. v. Donahue*, 223 S.E.2d 433, 440 (W. Va. 1976))). The Court therefore finds that the sophistication of the parties is not indicative of procedural unconscionability.

Third, Plaintiff argues that the ADR Clause is procedurally unconscionable because Plaintiff's owner "was not informed of the [ADR Clause]." (ECF No. 11 at 8.) This argument is a non-starter, as "there is no requirement that the more sophisticated party to a contract offer the less sophisticated party an oral explanation of the terms of the contract." *Adkins v. Labor Ready, Inc.*, 185 F. Supp. 2d 628, 638 (S.D. W. Va. 2001); *see also Dytko*, 2014 WL 2440496, at *5 ("[W]hile the plaintiffs imply that the defendant should have explained what arbitration was, the defendant was not under any obligation to do so."); *Miller v. Equifirst Corp. of W. Va.*, Civil Action No. 2:00-0335, 2006 WL 2571634, at *11 (S.D. W. Va. Sept. 5, 2006) (stating that a party to an arbitration agreement "was under no duty to orally explain the terms of the contract"). Plaintiff does not allege that it did not have an opportunity to consider the language of the contracts. (*See* ECF No. 11.) As such, Plaintiff had only to read these relatively short agreements to notice and analyze the ADR Clause.

Fourth, Plaintiff argues that the ADR Clause is procedurally unconscionable because it "is the final clause in a six page single-spaced subcontract." (*Id.* at 7.) While the ADR Clause is at the end of the Contracts, these agreements are remarkably short—six pages—particularly considering that they pertain to hundreds of thousands of dollars' worth of work on a federal construction project. (*See* ECF No. 7, Ex. A, arts. I & XVI; *id.*, Ex. B, arts. I & XVI; *cf. Schultz v. Dan Ryan*

*Builders, Inc.*, Civil Action No. 3:12–CV–15, 2013 WL 3365244, at *12 (N.D. W. Va. July 3, 2013) (stating that a contract between two individuals and a construction company "was relatively short—seven pages plus eight pages of addenda"). Additionally, the ADR Clause has the same typeface as the remainder of the agreements and is directly above the signature lines. (*See* ECF No. 7, Ex. A, art. XVI; *id.*, Ex. B, art. XVI.) The ADR Clause is thus not hidden in a large agreement, but readily apparent in fairly short contracts. *Cf. Kelley v. Sallie Mae, Inc.*, Civil Action No. 5:14cv138 (STAMP), 2015 WL 1650080, at *2 & 7 (N.D. W. Va. Apr. 14, 2015) (finding that arbitration provisions in promissory notes for student loans were not procedurally unconscionable where the contracts were allegedly "pre-printed form contracts with arbitration agreements buried at the end of the 8th and 9th pages in small print"); *Price v. Morgan Fin. Grp.*, No. 12–1026, 2013 WL 3184671, at *3 (W. Va. June 24, 2013) (finding that a "customer account information form" agreement was not procedurally unconscionable because, in part, it "contained a distinct reference, directly above the signature line, to the agreement to arbitrate, and that language was printed in capitalized letters"). The Court thus finds that the placement of the ADR Clause on the sixth and final page of the Contracts is not indicative of procedural unconscionability.

Finally, Plaintiff argues that the ADR Clause is procedurally unconscionable because "it is not identified as an arbitration clause at all," but rather "as an Alternative Dispute Resolution Clause." (ECF No. 11 at 7.) Plaintiff is correct that the title of the ADR Clause is "Alternative Dispute Resolution Process." (*See* ECF No. 7, Ex. A, art. XVI; *id.*, Ex. B, art. XVI.) However, the fact that the ADR Clause pertains to arbitration is readily apparent from a simple reading of this clause. (*See id.*, Ex. A, art. XVI; *id.*, Ex. B, art. XVI.) Indeed, the ADR Clause uses the terms "arbitration" or "arbitrator" no less than eight times. (*See id.*, Ex. A, art. XVI; *id.*, Ex. B, art. XVI.)

As such, beyond the obvious import of the ADR Clause's title, Plaintiff—a commercial entity—had only to exercise its opportunity to read the ADR Clause to ascertain the purpose and scope of the ADR Clause. The Court therefore finds that the title of the ADR Clause is also not indicative of procedural unconscionability.

For the foregoing reasons, the Court finds that the ADR Clause is not procedurally unconscionable. Nonetheless, the Court will next address Plaintiff's arguments regarding substantive unconscionability. *See, e.g.*, *Kelley*, 2015 WL 1650080, at *7 ("Notwithstanding the lack of procedural unconscionability, this [c]ourt will address the second component for a claim of unconscionability.").

*Substantive Unconscionability*

Plaintiff argues that "[a] review of the [ADR Clause] . . . clearly reveals" that its terms "tilt[] the scale heavily on the side of being substantively unconscionable." (ECF No. 11 at 6.) The Court agrees, in part.

"Substantive unconscionability involves unfairness in the contract itself and whether a contract term is one-sided and will have an overly harsh effect on the disadvantaged party." *Brown II*, 729 S.E.2d at 228 (quoting *Brown I*, 724 S.E.2d at 262). "[N]o single, precise definition of substantive unconscionability can be articulated because the factors to be considered vary with the content of the agreement at issue." *Id.* at 229 (citation omitted). "Generally, courts should consider the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns." *Id.* at 228 (quoting *Brown I*, 724 S.E.2d at 262). "[C]ourts should assess whether a contract provision is substantively unconscionable on a case-by-case basis." *Id.* at 229 (quoting *Brown I*, 724 S.E.2d at 288).

22

Plaintiff raises two arguments regarding substantive unconscionability. (*See* ECF No. 11 at 6–7.) First, Plaintiff argues that the ADR Clause is substantive unconscionable because it "would impose unreasonable and burdensome costs" upon Plaintiff. (*Id.* at 6.) "It may well be that the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her . . . rights in the arbitral forum.'" *Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 90 (2000). "It is not only the costs imposed on the claimant but the risk that the claimant may have to bear substantial costs that deters the exercise of the constitutional right of due process." *Brown II*, 729 S.E.2d at 229 (citation omitted). As such, "[i]f an agreement to arbitrate imposes high costs that might deter a litigant from pursuing a claim, a trial court may consider those costs in assessing whether the agreement is substantively unconscionable." *State ex rel. Richmond Am. Homes of W. Va., Inc. v. Sanders*, 717 S.E.2d 909, 921 (W. Va. 2011).

The Supreme Court of Appeals of West Virginia provided the following pertinent discussion regarding factoring arbitration costs into the substantive unconscionability analysis:

> Provisions in a contract . . . that if applied would impose unreasonably burdensome costs upon or would have a substantial deterrent effect upon a person seeking to enforce and vindicate rights and protections or to obtain statutory or common-law relief and remedies that are afforded by or arise under state law that exists for the benefit and protection of the public, are unconscionable; unless the court determines that exceptional circumstances exist that make the provisions conscionable. In any challenge to such a provision, the responsibility of showing the costs likely to be imposed by the application of such a provision is upon the party challenging the provision; the issue of whether the costs would impose an unconscionably impermissible burden or deterrent is for the court.

*Id.* (quoting *State ex rel. Dunlap v. Berger*, 567 S.E.2d 265, 266 (W. Va. 2002)); *see also Randolph*, 531 U.S. at 92 ("[W]here . . . a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs.")

23

Unlike many cases involving arguments of unconscionability due to arbitration costs, the ADR Clause does not include any fee-splitting provisions. (*See* ECF No. 7, Ex. A, art. XVI; *id.*, Ex. B, art. XVI); *cf. Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549, 557–58 (4th Cir. 2001) (concluding "that a case-by-case inquiry, rather than a per se rule, is more appropriate for determining the enforceability of an arbitration agreement that contains a fee-splitting provision"). Indeed, the ADR Clause does not reference costs at all. (*See* ECF No. 7, Ex. A, art. XVI; *id.*, Ex. B, art. XVI.) *See generally Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 306 (4th Cir. 2001) ("[The] failure of an arbitration agreement to address costs and fees does not alone make the agreement unenforceable." (citing *Randolph*, 531 U.S. 79)). Nonetheless, Plaintiff argues that the inherent costs of arbitration pose a substantial burden. (*See* ECF No. 11 at 7.) In particular, Plaintiff asserts that, after considering the American Arbitration Association's (the "AAA") nonrefundable fees, the pay rates of potential arbitrators, and other potential costs, "[i]t would not be a stretch to believe that [Plaintiff] would incur $50,000.00 in administrative costs . . . to pursue its claim." (*Id.*)

The Court is not persuaded by this argument. Plaintiff provides no specific information regarding its own finances or how these potential costs would present an unreasonable burden or have a substantial deterrent effect upon it pursuing its claims through arbitration. (*See* ECF No. 11.) Absent this required showing, Plaintiff's argument that potential arbitration costs make the ADR Clause substantively unconscionable fails. *See, e.g.*, *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002) (rejecting the plaintiff's argument that an arbitration agreement was unconscionable because, in part, the plaintiff made "no showing of the specific financial status of any of the plaintiffs at the time this action was brought"); *Dytko v. Chesapeake Appalachia, LLC*,

24

Civil Action No. 5:13CV150, 2014 WL 2440496, at *8 (N.D. W. Va. May 30, 2014) (finding that an arbitration clause was not substantively unconscionable due to the purported prohibitive costs of arbitration where the plaintiffs did not present the court "with any evidence concerning the plaintiffs' ability or inability to pay the fees that may be assessed in arbitration"); *Heller v. TriEnergy, Inc.*, 877 F. Supp. 2d 414, 430 (N.D. W. Va. 2012) (rejecting the plaintiff's cost argument where he "failed to provide any evidence that would lead [the court] to find that the costs would impose upon him an unconscionably impermissible burden or deterrent"). Furthermore, Plaintiff provides no economic comparison between the costs of pursuing its claims before this Court or in arbitration. (*See* ECF No. 11.) The Court therefore cannot perform "a proper comparison of the cost differential between the two forums," *Dytko*, 2014 WL 2440496, at *8, to determine "whether the arbitral forum . . . is an adequate and accessible substitute to litigation," *Bradford*, 238 F.3d at 556. As such, Plaintiff's "speculation as to the costs of arbitration, without more, provides insufficient support for a finding of substantive unconscionability." *Dytko*, 2014 WL 2440496, at *8.

Second, Plaintiff argues that the ADR Clause "lacks any attempt at mutuality" because, in relevant part, "[i]ts application is at the sole discretion of [Defendant] BrooAlexa." (ECF No. 11 at 6.) Defendant responds that Plaintiff's "argument is nonsensical," as both parties may seek relief under the ADR Clause. (ECF No. 12 at 9–10.)

"[I]n assessing whether a contract provision is substantively unconscionable, a court may consider whether the provision lacks mutuality of obligation." *Dan Ryan Builders, Inc. v. Nelson*, 737 S.E.2d 550, 560 (W. Va. 2012). Indeed, "[s]ome courts suggest that mutuality of obligation is the locus around which [the] substantive unconscionability analysis revolves." *Brown II*, 729

25

S.E.2d 217, 228 (W. Va. 2012) (quoting *Brown I*, 724 S.E.2d 250, 287 (W. Va. 2011)); *see also Sanders*, 717 S.E.2d at 921 ("In assessing substantive unconscionability, the paramount consideration is mutuality." (quoting *Abramson v. Juniper Networks, Inc.*, 9 Cal Rptr. 3d 422, 442 (Cal. Ct. App. 2004))). "Agreements to arbitrate must contain at least a modicum of bilaterality to avoid unconscionability." *Brown II*, 729 S.E.2d at 228 (citations omitted). As such, "[i]f a provision creates a disparity in the rights of the contracting parties such that it is one-sided and unreasonably favorable to one party, then a court may find the provision is substantively unconscionable." *Id.* at 560.

However, the Supreme Court of Appeals of West Virginia "emphasize[d] that a one-sided contract provision may not be unconscionable under the facts of all cases." *Id.* at 559; *see also State ex rel. Ocwen Loan Servicing, LLC v. Webster*, 752 S.E.2d 372, 395 (W. Va. 2013) ("[A] lack of mutuality does not absolutely render a contract unconscionable . . . ."). "A court in its equity powers is charged with the discretion to determine, on a case-by-case basis, whether a contract provision is so harsh and overly unfair that it should not be enforced under the doctrine of unconscionability." *Id.* at 559–60.

The Court finds that the ADR Clause lacks mutuality. The ADR Clause provides, in relevant part:

> [Plaintiff] and [Defendant BrooAlexa] covenant and agree in the event of any claim, dispute or other matter in question arising out of or relating to this Agreement or breach thereof, [Plaintiff] and [Defendant BrooAlexa] shall continue to perform . . . all obligation[s] as required under the Contract notwithstanding the existence of such dispute(s) and that either party may seek such relief as may be permitted in accordance with the following terms and conditions:

> . . .

> Should [Plaintiff] and [Defendant BrooAlexa] be unable to resolve said dispute(s) through mediation, any and all dispute(s), *at the sole discretion of [Defendant BrooAlexa]*, shall be settled by the [AAA] in accordance with it [sic] Construction Industry Arbitration Rules (including the Emergency Interim Relief Procedures).

(ECF No. 7, Ex. A, art. XVI (emphasis added); *id.*, Ex. B, art. XVI (emphasis added).) This provision explicitly provides that Defendant BrooAlexa retains the sole authority to trigger arbitration of "dispute(s)"—a term that the ADR Clause broadly describes as encompassing any "matter . . . arising out of or relating to [the] Agreement or breach thereof." (*See id.*, Ex. A, art. XVI; *id.*, Ex. B, art. XVI.) Plaintiff lacks a corresponding authority to compel arbitration and, as such, does not have the same available remedies as Defendant BrooAlexa. (*See id.*, Ex. A, art. XVI; *id.*, Ex. B, art. XVI.) As noted by the Supreme Court of Appeals of West Virginia, this type of arbitration provision falls squarely under the theory of lack of mutuality:

> [A] contract which requires the weaker party to arbitrate any claims he or she may have, but permits the stronger party to seek redress through the courts, may be found to be substantively unconscionable. Such unilateral arbitration clauses lend themselves extremely well to the application of the doctrine of unconscionability because the right the clause bestows upon its beneficiary is so wholly one-sided and unfair that the courts should feel no reluctance in finding it unacceptable . . . .

*Dan Ryan Builders, Inc.*, 737 S.E.2d at 559.

Defendants argue that the ADR Clause provides mutuality because it states that "either party may seek such relief." (ECF No. 12 at 9–10.) However, Defendants' argument is undermined by the language of the ADR Clause—particularly the remainder of the sentence that Defendants only partially quote. (*See* ECF No. 7, Ex. A, art. XVI; *id.*, Ex. B, art. XVI.) While the ADR Clause provides that "either party may seek such relief," this language is then limited by the phrase "as may be permitted in accordance with the following terms and conditions," including that "any and

all dispute(s), at the sole discretion of [Defendant BrooAlexa], shall be settled by the [AAA]."[3] (*Id.*, Ex. A, art. XVI; *id.*, Ex. B, art. XVI.) As such, contrary to Defendants' argument, the plain language of the ADR Clause demonstrates that it lacks mutuality as to which party may compel arbitration.

The Court thus finds that the ADR Clause lacks mutuality, which is indicative of substantive unconscionability.[4] Nonetheless, this finding does not make the Contracts or the included ADR Clause unconscionable. Under West Virginia law, unconscionability requires "a showing of both procedural and substantive unconscionability, at least in some small measure." *State ex rel. Johnson Controls, Inc. v. Tucker*, 729 S.E.2d 808, 820–21 (W. Va. 2012). As discussed above, Plaintiff fails to demonstrate any measure of procedural unconscionability. Absent this showing, the ADR Clause is not unconscionable. *See, e.g.*, *id.* Furthermore, the Court notes that "[a]rbitration clauses that provide for arbitration at the unilateral election of one party are common in construction contracts and courts often enforce these provisions." *Chapman-Martin Excavating & Grading, Inc. v. Hinkle Contracting Co.*, Civil Action No. 2:11–cv–00563, 2011 WL 5999868, at *5 (S.D. W. Va. Nov. 30, 2011) (citations omitted).

"In sum, considering the totality of the circumstances in this case, Plaintiff[] [has] failed to demonstrate that the [ADR Clause] and its terms were so unfair that it resulted in an overall imbalance or one-sidedness of [this provision]." *Schultz v. Dan Ryan Builders, Inc.*, Civil Action

_____

[3] Indeed, Defendants weaken their own assertion that "either party may seek such relief" later in the same briefing by stating that "[t]his is a simple [contract], only six pages in length, which gives *one party* the right to demand that, *at its discretion*, any and all disputes 'arising out of or relating to this Agreement or breach thereof' will be resolved through arbitration." (ECF No. 12 at 12 (emphasis added).)

[4] As the Court finds that the ADR Clause lacks mutuality insofar as it gives "sole discretion" to Defendant BrooAlexa to trigger arbitration proceedings, the Court need not reach Plaintiff's other arguments regarding mutuality. (*See* ECF No. 11 at 6 (arguing that the ADR Clause "lacks any attempt at mutuality" because (1) "[i]ts application is at the sole discretion of [Defendant] BrooAlexa;" (2) "[i]t limits [Plaintiff] from the potential recovery of punitive damages;" (3) "[a]ny and all arbitration proceedings are to be conducted in a location chosen by [Defendant] BrooAlexa;" and (4) "[t]he provision allows BrooAlexa to join any other party it deems necessary.").)

No. 3:12–CV–15, 2013 WL 3365244, at *14 (N.D. W. Va. July 3, 2013). Accordingly, the Court finds that the ADR Clause—while substantively unconscionable, to some degree—is not unconscionable under West Virginia law.

2.     Ambiguity

Plaintiff alternatively argues that the ADR Clause is invalid and unenforceable because it is ambiguous. (ECF No. 11 at 8–9.) The Court again disagrees.

Under West Virginia law, "[a] contract is ambiguous when it is reasonably susceptible to more than one meaning in light of the surrounding circumstances and after applying the established rules of construction." *Williams v. Precision Coil, Inc.*, 459 S.E.2d 329, 342 (W. Va. 1995); *see also Payne v. Weston*, 466 S.E.2d 161, 166 (W. Va. 1995) ("The term 'ambiguity' is defined as language 'reasonably susceptible of two different meanings' or language 'of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning.'" (quoting *Shamblin v. Nationwide Mut. Ins. Co.*, 332 S.E.2d 639, 640 (W. Va. 1985))). "[A] court should read . . . provisions to avoid ambiguities and not torture the language to create them." *Payne*, 466 S.E.2d at 166. "As such, ambiguity does not result merely because the parties do not agree to the construction of the contract." *Dytko v. Chesapeake Appalachia, LLC*, Civil Action No. 5:13CV150, 2014 WL 2440496, at *3 (N.D. W. Va. May 30, 2014) (citing *Lee v. Lee*, 721 S.E.2d 53, 56 (W. Va. 2011)). "Instead, the question as to whether a contract is ambiguous is a question of law to be determined by the courts." *Id.* (citing *Pilling v. Nationwide Mut. Fire Ins. Co.*, 500 S.E.2d 870, 872 (W. Va. 1997)); *see also State ex rel. Richmond Am. Homes of W. Va., Inc. v. Sanders*, 717 S.E.2d 909, 924 (W. Va. 2011) ("Whether a contract is ambiguous is a question of law . . . .")

Plaintiff argues that the ADR Clause is ambiguous because "[i]t references negotiation, mediation, arbitration, litigation, State court and Federal court as different means of resolving disputes but it purports to give sole discretion in the process to [Defendant BrooAlexa]." (ECF No. 11 at 8–9.) In support of its position, Plaintiff argues that the ADR Clause is similar to an arbitration provision that the Supreme Court of Appeals of West Virginia found ambiguous in *State ex rel. Richmond American Homes of West Virginia v. Sanders*. (*Id.* at 9 (citing 717 S.E.2d 909 (W. Va. 2011)).) Defendants respond that the ADR Clause is not ambiguous, as it provides an "orderly progression [that] begins with the parties negotiating in good faith, moves to their attempting to resolve the dispute through mediation, and ends with the dispute being settled by the [AAA] in accordance with its Construction Industry Arbitration Rules." (ECF No. 12 at 12.)

The Court finds that the ADR Clause is not ambiguous. The ADR Clause provides a sequential process that begins with negotiation and mediation, moves to arbitration, and, if the previous steps are unsuccessful, ends with "litigation in any court having jurisdiction thereof." (ECF No. 7, Ex. A, art. XVI; *id.*, Ex. B, art. XVI.) As such, there are not multiple permissible interpretations of the ADR Clause and the available options for each party are clearly provided.

The Court also finds that *Sanders* is distinguishable. In *Sanders*, the Supreme Court of Appeals of West Virginia found that an arbitration provision was ambiguous because "[t]he paragraph plainly intimate[d] at least five times that a plaintiff retain[ed] the right to bring a civil action in a courtroom before a judge, and absolutely muddle[d] the language that follow[ed] stating that the plaintiff [was] barred from bringing a civil action and must only pursue a remedy before an arbitrator." 717 S.E.2d at 924. Thus, each party's available remedies were not clearly delineated. *See id.*

There is no such ambiguity in this case. The ADR Clause provides the dispute-resolution steps available to the parties in a sequential order, without any potential question as to whether a party may pursue litigation before pursuing the earlier processes. (*See* ECF No. 7, Ex. A, art. XVI; *id.*, Ex. B, art. XVI.) While Plaintiff may now disagree with the parties' agreed-upon dispute-resolution sequence, that disagreement does not inject ambiguity into an otherwise clear contractual clause. *See, e.g.*, *Dytko*, 2014 WL 2440496, at *3. The Court therefore finds that the ADR Clause is not ambiguous.

For the foregoing reasons, the Court finds that the ADR Clause is a valid and enforceable agreement between Plaintiff and Defendant BrooAlexa and that the FAA mandates that the Court refer arbitrable claims.

## C.      Scope of the ADR Clause

The next issue before the Court is which of Plaintiff's claims are arbitrable under the ADR Clause. *See, e.g.*, *Glass v. Kidder Peabody & Co.*, 114 F.3d 446, 456 (4th Cir. 1997) ("It is clear . . . that under the [FAA], the district court is expressly limited to making only the pre-order determinations of identifying the arbitrable issues and reviewing the making and performance of the arbitration agreement."). Defendants argue that Count I (breach of contract), Count III (quantum meruit), and Count IV (violation of the Prompt Payment Act) are arbitrable and the Court should "compel [Plaintiff] to pursue [these] claims . . . via arbitration." (ECF No. 12 at 14.) The Court agrees.

"[T]he question of arbitrability . . . is undeniably an issue for judicial determination." *AT & T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986); *see also id.* ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate

31

is to be decided by the court, not the arbitrator." (citations omitted)). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). As such, "[a]rbitration . . . is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (citations omitted). "[T]he determination of what disputes are arbitrable is focused on the intent of the parties." *Carson v. Giant Food, Inc.*, 175 F.3d 325, 329 (4th Cir. 1999) (citing *AT & T Techs., Inc.*, 475 U.S. at 648–49). "Generally, the parties—not the courts—control which disputes will be arbitrated." *Id.*

"[I]t is also 'well settled law that federal policy favors arbitration of . . . disputes, and that a presumption of arbitrability is to be applied in cases of ambiguity or doubt.'" *Winston-Salem Mailers Union 133, CWA v. Media Gen. Operations, Inc.*, 55 F. App'x 128, 138 (4th Cir. 2003) (quoting *Lynchburg Foundry Co. v. Patternmakers League of N. Am.*, 597 F.2d 384, 386 (4th Cir. 1979)); *see also Granite Rock Co.*, 561 U.S. at 298 ("[T]he 'law's permissive policies in respect to arbitration' counsel that 'any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration.'" (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 945 (1995))). *But see Salsbery v. Verizon Wireless (VAW), LLC*, Civil Action No. 2:13–cv–26419, 2014 WL 3876635, at *5–6 (S.D. W. Va. Aug. 7, 2014) (discussing the difference between broad and narrow arbitration provisions and stating that case law "indicate[s] that the strong presumption of arbitrability applies exclusively to broad arbitration agreements" (citations omitted)). "An issue will be classified as being outside the scope of an arbitration provision only when the parties have manifested such an intent in their written agreement." *Great Am. Ins. Co. v. Hinkle Contracting*

32

*Corp.*, 497 F. App'x 348, 352 (4th Cir. 2012) (citing *Peabody Holding Co. v. United Mine Workers, Int'l Union*, 665 F.3d 96, (4th Cir. 2012)). "Because sophisticated parties negotiate their written contracts with an understanding of this policy favoring arbitration, courts require this degree of clarity before determining that a particular claim is not subject to an arbitration provision." *Id.* (citing *Peabody Holding Co.*, 665 F.3d at 104). Furthermore, the Court should "leave all questions concerning the scope of an arbitration agreement to the arbitrator, 'unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Winston-Salem Mailers Union 133, CWA*, 55 F. App'x at 138 (quoting *AT & T Techs., Inc.*, 475 U.S. at 650).

"When evaluating arbitrability, [courts] must not accept a party's invitations to critically appraise the merits of the underlying dispute." *Peabody Holding Co.*, 665 F.3d at 104. "Nor may [courts] sanction obfuscation designed to shepherd an otherwise-arbitrable grievance into court." *Id.* "Cognizant that parties are able to craft cleverly phrased arguments in an attempt to secure a judicial forum to hear an underlying claim, '[courts] are . . . obliged not to permit a party to wiggle out of an obligation to which it has agreed.'" *Id.* (quoting *United Steel Workers Int'l Union AFL-CIO/CLC v. Cont'l Tire N. Am., Inc.*, 568 F.3d 158, 166 (4th Cir. 2009)).

In this case, the ADR Clause's scope includes "any claim, dispute or other matter in question arising out of or relating to [the Contracts] or breach thereof." (ECF No. 7, Ex. A, art. XVI; *id.*, Ex. B, art. XVI.) "Both the Supreme Court and [the Fourth Circuit] have characterized similar formulations" of the operative language here—"arising out of or relating to"—as "broad arbitration clauses capable of an expansive reach." *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996) (citing *Prima Paint Corp. v. Flood & Conklin Mfg.*

33

*Co.*, 388 U.S. 395, 398 (1967) and *J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 321 (4th Cir. 1988)). The Fourth Circuit noted that "the sweeping language of a similarly broad arbitration clause 'd[oes] not limit arbitration to the literal interpretation or performance of the contract, but embrace[s] every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute.'" *Id.* (emphasis omitted) (quoting *J.J. Ryan & Sons*, 863 F.2d at 321). When addressing this type of broad arbitration provision, the court should "examin[e] the significance of the relationship between each of [the plaintiff's] claims and the . . . agreement." *Id.* "In applying this standard, [the court] 'must determine whether the factual allegations underlying the claim are within the scope of the arbitration clause, regardless of the legal label assigned to the claim.'" *Id.* (quoting *J.J. Ryan & Sons*, 863 F.2d at 319).

Count I is a breach of contract claim, which alleges that, "[a]s a direct, proximate and foreseeable result of [Defendant] BrooAlexa's breach of contract and other duties owed to [Plaintiff], [Plaintiff] has suffered a substantial financial loss and is entitled to recover judgment from [Defendant] BrooAlexa." (ECF No. 1 ¶ 24.) This breach-of-contract claim arises directly out of the Contracts and, as such, "it is clearly arbitrable." *Long v. Silver*, 248 F.3d 309, 318 (4th Cir. 2001).

Count III is a quasi-contractual claim, which asserts that "[Plaintiff] is entitled to judgment against [Defendants] BrooAlexa and American Contractors under the theory of [q]uantum [m]eruit for the reasonable value of the work and services provided that have not been paid for." (ECF No. 1 ¶ 34.) The Court finds that this claim bears a substantial relationship to the Contracts. Count III alleges that Defendant BrooAlexa "understood that [Plaintiff] was to be compensated for [the] materials and services" Plaintiff provided for the Project. (*Id.* ¶ 31.) Part of the basis for this

assertion are the additional allegations that Plaintiff and Defendant BrooAlexa did not agree on the total value of the Contracts in earlier versions of these documents and negotiated by omitting reference in the Contracts to certain potential cost-incurring activities, such as "addressing subsurface rock or other differing site conditions." (*Id.* ¶¶ 10–11.) Plaintiff relies on these purported earlier iterations of the Contracts—as well as the alleged verbal negotiations between Plaintiff and Defendant BrooAlexa surrounding the Contracts—as the foundation for its quantum meruit claim. (*See id.* ¶¶ 29–34.) These allegations establish that Plaintiff's quantum meruit claim has a significant relationship with the Contracts and the included ADR Clause. *See, e.g.*, *Am. Recovery Corp.*, 96 F.3d at 95 (finding that the plaintiff's quantum meruit claim was significantly related to the agreements containing an arbitration provision where the plaintiff's claim relied on "the terms of the . . . agreement," "a prior amendment to the . . . agreement," and the defendant's purported representations to the plaintiff that the plaintiff's "efforts in securing . . . funding would be compensated through the vehicle of an amendment to the . . . agreement"). The Court therefore finds that Count III falls within the scope of the ADR Clause and is arbitrable.[5]

Finally, Count IV alleges that Plaintiff performed its contractual duties under the Contracts and Defendants violated the Prompt Payment Act, 31 U.S.C. §§ 3901 and 3905, by not making "payment to [Plaintiff] pursuant to the [Contracts] or the payment bond." (ECF No. 1 ¶ 39.)

---

[5] Defendants argue that the Court should dismiss Count III for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 8 at 10–12; ECF No. 12 at 13–14.) As the Court finds that Defendants also request that the Court compel arbitration of Count III and that this claim is arbitrable pursuant to the ADR Clause, the Court does not reach Defendants' argument under Rule 12(b)(6). *See, e.g.*, *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." (citations omitted)); *Peabody Holding Co.*, 665 F.3d at 104 ("As the Supreme Court has declared, courts at the arbitrability stage 'have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim.'" (quoting *AT & T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 650 (1986))).

Plaintiff may not maintain this claim without reference to the Contracts and, as such, Count IV undoubtedly has a significant relationship to the Contracts. *See, e.g.*, *U.S. ex rel. Tesar Indus. Contractors, Inc. v. Turner Constr. Co.*, No. 1:09–CV–1477, 2009 WL 3626696, at *4 (N.D. Ohio Oct. 29, 2009) (finding that the subcontractor plaintiff's Prompt Payment Act claim was arbitrable because it "could not be maintained without reference to" the contract between the subcontractor and prime contractor "and [the plaintiff's] subcontractor relationship with [the prime contractor]"). *See generally U.S. ex rel. Asphalt Contractors, & Site Work, Inc. v. KAR Contracting, LLC*, Civil Action No. 3:14–27451, 2015 WL 3651279, at *5 (S.D. W. Va. June 11, 2015) (discussing whether the federal Prompt Payment Act creates a private cause of action for subcontractors). Accordingly, the Court finds that Count IV also falls within the scope of the ADR Clause and is arbitrable.

The Court thus finds that Counts I, III, and IV are arbitrable pursuant to the ADR Clause. As these claims are arbitrable, the FAA mandates that the Court "direct the parties to proceed to arbitration" on these claims. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citations omitted).

## D.    Staying or Dismissing this Case

The final issue before the Court is whether to dismiss this case or stay it pending the resolution of the parties' arbitration proceedings. Defendants argue, in part, that the Court should dismiss this case, in its entirety, "and compel [Plaintiff] to pursue its cognizable claims via arbitration." (ECF No. 8 at 13.) Plaintiff responds that "even if this Court . . . compel[s] arbitration, the most" to which "Defendants would be entitled . . . is a stay of this proceeding." (ECF No. 11 at 10.)

"When a valid agreement to arbitrate exists between the parties and covers the matter in dispute, the FAA commands the federal courts to stay any ongoing judicial proceedings . . . and to compel arbitration." *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 937 (4th Cir. 1999) (citing 9 U.S.C. §§ 3 & 4); *see also Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709 (4th Cir. 2001) ("[T]he FAA requires a district court . . . to stay judicial proceedings involving issues covered by written arbitration agreements." (citing 9 U.S.C. § 3)). "Additionally, district courts have the power to stay claims against a non-arbitrating party when a case involves both arbitrating and non-arbitrating parties." *Chapman-Martin Excavating & Grading, Inc. v. Hinkle Contracting Co.*, Civil Action No. 2:11–cv–00563, 2011 WL 5999868, at *4 (S.D. W. Va. Nov. 30, 2011) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983)). "Enforcement of agreements to arbitrate under the [FAA] may require piecemeal litigation, and the decision to stay the litigation of non-arbitrable claims or issues is a matter largely within the district court's discretion to control its docket." *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 97 (4th Cir. 1996) (citations omitted).

"Notwithstanding the terms of § 3 [of the FAA] . . . , dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc.*, 252 F.3d at 709–10 (citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)). *See generally Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 376 n.18 (4th Cir. 2012) (noting that "[t]here may be some tension between [the Fourth Circuit's] decision in *Hooters*—indicating that a stay is required when the arbitration agreement covers the matter in dispute—and *Choice Hotels*—sanctioning dismissal when all of the issues presented . . . are arbitrable"). However, if a

case involves issues that "are not all subject to arbitration," then "dismissal is not appropriate." *Aggarao*, 675 F.3d at 376 n.18.

As noted above, the Court finds that Counts I, III, and IV are within the scope of the valid and enforceable ADR Clause and, as such, are arbitrable. However, Defendants do not move to compel arbitration as to the remaining claim—Count II. (*See* ECF No. 12 at 14.) As the Court does not compel arbitration of Count II, dismissal of this case is inappropriate. *See, e.g.*, *Aggarao*, 675 F.3d at 376 n.18. Instead, the Court finds that a stay of this matter pending the resolution of the arbitration proceedings is proper under the circumstances.

### IV. Conclusion

For the reasons stated above, the Court **GRANTS** the Motion, (ECF No. 7), insofar as it requests that the Court compel the parties to arbitrate Counts I, III, and IV of the Complaint and order a stay in this case pending the completion of these arbitration proceedings. The Court **DENIES** the Motion, (*id.*), insofar as it requests that the Court dismiss this case—or any claims in the Complaint—pursuant to Federal Rule of Civil Procedure 12(b)(1).

Accordingly, the Court **COMPELS** the parties to arbitrate Counts I, III, and IV of the Complaint, (ECF No. 1 ¶¶ 21–24, 29–41), pursuant to the ADR Clause, (ECF No. 7, Ex. A, art. XVI; *id.*, Ex. B., art. XVI). The Court **ORDERS** Defendants to initiate the arbitration process as to these claims within 60 days of the date of this Memorandum Opinion and Order.

The Court **STAYS** this case pending the completion of these arbitration proceedings. The Court **ORDERS** the parties to file a joint motion requesting an end to the stay in this case within 30 days of the completion of these arbitration proceedings.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:     August 10, 2015

_____

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE